### RIDGELY v. ÆTNA LIFE INS. CO.

(Supreme Court, Appellate Division, First Department. February 13, 1914.)

1. INSURANCE (§ 453*)—ACCIDENT INSURANCE—OCCUPATION OF INSURED—"RECREATION."

 Where one insured as a financial writer and reporter was engaged, when injured, in testing and trying out in the air a flying machine he had built, he was not engaged in "recreation," within the provision of the policy that if injured after having changed his occupation to one rated more hazardous, or while engaged in doing an act pertaining to the occupation so rated except while engaged in recreation, the company's liability shall be only such proportion as the premium paid will purchase at the rate for the more hazardous occupation.

 [Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1165; Dec. Dig. § 453.*

 For other definitions, see Words and Phrases, vol. 7, p. 6021.]

2. INSURANCE (§ 530*)—ACCIDENT INSURANCE—EXTRAORDINARY OCCUPATION.

 Where the classification of risks provided that each $1,000 of insurance carried with it $5 weekly indemnity, unless otherwise specified, and recited, after the classification, "Occupation, aëreonaut (not insurable)," that the limit of risk was $500, insured could only recover $2.50 a week for injuries sustained while operating a flying machine.

 [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1309, 1316, 1317; Dec. Dig. § 530.*]

 Hotchkiss, J., dissenting.

Appeal from Trial Term, New York County.

Action by Albert Newton Ridgely against the Ætna Life Insurance Company. From a judgment for plaintiff, defendant appeals. Reversed, and judgment directed for plaintiff on decision as modified.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, DOWLING, and HOTCHKISS, JJ.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

John Vernou Bouvier, Jr., of New York City (W. Montague Geer, Jr., of New York City, on the brief), for appellant.

David B. Lackey, for respondent.

LAUGHLIN, J. This is an action to enforce the liability of the defendant on a policy of accident insurance which it issued to plaintiff on the 12th day of June, 1911. The issues were, by consent, tried before the court without a jury.

At the Mineola aviation field on the 21st day of July following the issuance of the policy, the plaintiff made an ascension alone in a Curtiss type biplane, which he had constructed with a view to renting on shares to aviators desiring to enter aviation prize contests. He ascended 20 or 30 feet, and then, on attempting to keep the machine on that level, he found that it was not properly balanced. It continued to ascend, and he was carried to a height of 60 or 70 feet. By leaning far forward he changed the course to downward, and then, before he could right it, the forward wheels struck the ground, and it toppled over, and he sustained injuries from which it was stipulated that he suffered a total disability for 6 weeks and 3 days, and a partial disability for 18 weeks thereafter. By the terms of the policy, for the risk contemplated, plaintiff would be entitled to an indemnity of $30,000 in case of death and at the rate of $150 per week for total disability, and one-half that amount for partial disability. He has recovered for disability on that basis.

The principal contention made in behalf of the appellant is that plaintiff was guilty of a breach of warranty in his application on which the policy was issued, and therefore could not recover. The plaintiff has long taken an active interest in athletics and personally participated in feats of diving, skating, and bicycle riding. He described his occupation during the last 15 years before the trial as that of a financial writer and reporter. About one year prior to taking out the policy he became interested in aëroplanes and had been experimenting with models during all or the last half of that period. He conceived the idea of building one, and in January, 1911, he, with the assistance of others whom he employed, commenced constructing it. It was practically completed and ready for testing in May of that year. He was testing and experimenting with it at the time he met with the accident. He had experimented with the machine on the ground a few times before, but had not attempted to rise from the ground with it; but, on one occasion a few days before the accident, he ran it only a short distance just skimming the ground. According to his testimony, he did not expect personally to test the machine when he went to the aviation field on the day of the accident, for he had an appointment with one Russell, who was to try it, and Russell having failed to appear, and everything being favorable, he determined to test it near the ground himself. He had visited the field and observed flights of aviators that spring three or four times a week.

At or shortly before the time plaintiff applied for the policy in question, he procured from the Standard Company an accident policy for $15,000, and prior thereto he had had no policy of accident insurance

"that amounted to anything," as he put it. The application was on a printed blank furnished by the company for 20 statements of fact which the applicant warranted to be true. The seventh statement with the blank filled in became a representation that he understood that risks are classified according to occupations, and that his occupation, "financial writer and reporter," as therein described, was "preferred." The fifteenth statement as printed was as follows:

"I have not in contemplation any special journey nor any hazardous undertaking, not required by my occupation as above described, except as herein stated."

And in the blank following there was filled in, "No exceptions."

It is urged on the part of the appellant that the statement that he did not contemplate any hazardous undertaking was false.

It must be conceded that the evidence, the substance of which has been stated, gives rise to a strong suspicion that plaintiff applied for the insurance in anticipation of an accident from his biplane, which was then ready for ascension; but that depends on the state of his mind at the time. In the view we take of another point and of a suggestion made by counsel for appellant that a new trial is not desired, we do not deem it necessary to decide whether the finding is so clearly against the weight of the evidence as to justify a reversal and a finding to the contrary or a new trial on that ground. We are of opinion that in no event can plaintiff recover more than $38.57, which would not entitle him to costs, and therefore we think that justice will be fairly approximated, if not fully attained, by reducing the recovery by that amount.

There is some conflict between the provisions of the policy itself and the company's "Classification Manual for Accident Insurance" filed, prior to plaintiff's application, with the superintendent of insurance of this state pursuant to the provisions of section 107 of the Insurance Law (Consol. Laws, c. 28), which were added thereto by chapter 636 of the Laws of 1910. The policy proper indicates that different risks are classified differently by the defendant, but it does not show or indicate that there are any risks against which the company does not insure at all, and it does not set forth the classification of risks; but said Classification Manual shows several risks there stated to be non-insurable. That is shown in such a manner, however, as to indicate that the company recognizes that it is liable to the extent of $500 in cases of accidents against which it prescribes no rates and for which it issues no policy expressly. Paragraph D of "Part XIII" of the "General Provisions" of the policy is as follows:

"If the insured is injured after having changed his occupation to one rated by this company in a more hazardous class than the premium paid by this policy covers, or while temporarily or otherwise engaged in doing any act or thing pertaining to any occupation so rated (except ordinary duties about his residence or while engaged in recreation), the company's liability shall be only such proportion of the principal sum or other indemnity as the premium paid by him will purchase at the rate and within the limit fixed by this company for such more hazardous occupation. Any unearned premium in excess of the amount required for such limit will be refunded upon demand."

In his application plaintiff stated his duties as "financial writer and reporter" to be "writing a daily market letter, forecasting financial probabilities."

[1] Plaintiff attempts to sustain the recovery on the theory that he was engaged in "recreation," within the exception contained in the paragraph quoted. There is no merit in that point, for plaintiff admitted that his purpose in ascending was to test and try out the machine. Defendant's said classification is not printed in the record, but extracts therefrom are set forth, as follows: Under the heading "Instructions" it contains the following:

"This Classification Manual covers only the classification, limit of risk, premiums, and designations of occupation to be used in writing accident business. * * * The maximum limit of risk is given at $10,000, but especially desirable, 'select' and 'preferred' risks may be written for $15,000 or for larger amounts upon special approval by the company. Applications, with full information, must be submitted to the company to secure such approval."

Under the heading "Classification of Risks," it contains the following:

"Each $1,000 of insurance carries with it $5.00 weekly indemnity, unless otherwise specified."

It also contains on page 6 the following:

| Occupation. | Class. | Limit of Risk. |
| --- | --- | --- |
| Aëronaut, navigator, or passenger (not insurable). | H. X. Ex. Peril. | $500 |

And on page 7 under the same headings:

| | | |
| --- | --- | --- |
| Air ship operator, builder, owner, experimenter, inventor, or passenger making ascensions (not insurable). | H. X. Ex. Peril. | $500 |

And on page 10 under the same headings:

| | | |
| --- | --- | --- |
| Aviator (not insurable). | H. X. Ex. Peril. | $500 |

[2] Assuming that plaintiff had knowledge of the fact that the Classification Manual was filed, and of its contents as found, still he would have been warranted in deeming that the company would be liable in any event for $500 if he met with an injury while temporarily ascending in, or experimenting with, his biplane. According to the strict terms of the policy, the plaintiff having been injured while engaged temporarily in performing acts relating to a more hazardous occupation, the company would be liable for the proportion of the insurance stated in the policy which the premium he paid would purchase at the rate fixed by the company for the more hazardous occupation; but, since by consulting the Classification Manual of which he had constructive notice, at least (see section 107 of Insurance Law), it appears that it does not insure such risks at all, the plaintiff is necessarily limited by the $500 liability provision. Since each $1,000 of insurance carries with it a weekly indemnity of $5 unless otherwise specified, it is reasonable to conclude that each $500 of insurance carries one-half that amount. For the period of total disability, therefore,

plaintiff was entitled to $2.50 per week, and, since he was to receive only one-half as much for partial as for total disability, the company's liability to him for partial disability is $1.25 per week, aggregating $38.57.

These views require the reversal of finding numbered 22, and that a finding be inserted in its place to the effect that plaintiff was not engaged in recreation at the time he was injured; and additional findings should be made setting forth the terms of the policy and Classification Manual on which these views are taken, in so far as not contained in the decision; and conclusions of law numbered 4, 6, and 7 should be reversed, and a conclusion of law inserted in place thereof to the effect that plaintiff is entitled to recover $38.57 and interest from February 19, 1912; and that the judgment should be reversed with costs to appellant, and judgment directed for plaintiff on the decision as modified.

INGRAHAM, P. J., and McLAUGHLIN and DOWLING, JJ., concur.

HOTCHKISS, J. I dissent and vote for affirmance.